# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:07CR00032 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **JESSE DANE COX AND ROBERT** ) | By: James P. Jones |
| **COX,** ) | Chief United States District Judge |
| Defendants. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Daniel R. Bieger, Copeland & Bieger, P.C., for Defendant Jesse Dane Cox, and A. Benton Chafin, Jr., Chafin Law Firm, P.C., for Defendant Robert Cox.*

In this criminal case, the defendants, convicted by a jury of being participants in a drug trafficking conspiracy, have filed posttrial motions seeking acquittal or a new trial. For the reasons that follow, I will deny the motions.

I

In a joint trial, the jury convicted Jesse Dane Cox of knowingly conspiring with others to distribute and to possess with intent to distribute five hundred grams or more of methamphetamine in violation of 21 U.S.C.A. § 841(a)(1) (West 1999), and Robert Cox of knowingly conspiring with others to possess methamphetamine, a lesser-included offense.

At trial, the government contended that the defendants, who are brothers, were part of a methamphetamine distribution conspiracy. Both defendants argued that they were addicts, not conspirators, and that to the extent they had been involved with a conspiracy to sell methamphetamine, their participation had occurred before the dates alleged in the Indictment.[1]

In their posttrial motions currently before the court,[2] both defendants maintain that there was insufficient evidence to find beyond a reasonable doubt that they knew of the conspiracy proven at trial or participated in it during the time alleged in the Indictment. Additionally, Jesse Cox argues that the government failed to prove beyond a reasonable doubt that five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine was attributable to him.

These motions have been briefed by the defendants and are now ripe for decision.

II

The evidence adduced at trial was sufficient for a reasonable jury to convict Jesse Cox of conspiracy to distribute, to attribute five hundred grams or more of a

---

[1] Throughout this opinion, the term "Indictment" refers to the Second Superseding Indictment in this case.

[2] Jesse Cox has moved for a Renewed Judgment of Acquittal or alternatively a New Trial, while Robert Cox has moved only for a Renewed Judgment of Acquittal.

-2-

substance containing methamphetamine to Jesse Cox, and to convict Robert Cox of conspiracy to possess. Therefore, I will deny each defendant's Renewed Motion for Judgment of Acquittal and Jesse Cox's Motion for New Trial.

A conviction must be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support it. *See Glasser v. United States*, 315 U.S. 60, 80 (1942). I must determine "whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Capers*, 61 F.3d 1100, 1107 (4th Cir. 1995) (alteration and internal quotation omitted).

Although a motion for a new trial may also be based on insufficient evidence, "a court should exercise its discretion to grant a new trial sparingly, and . . . it should do so only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotation omitted).

To prove conspiracy, "'the government must show, first, that a conspiracy existed; then, that the defendant had knowledge of the conspiracy; and finally, that the defendant voluntarily became a part of the conspiracy.'" *Capers*, 61 F.3d at 1107 (quoting *United States v. Bell*, 954 F.2d 232, 236 (4th Cir. 1992)).

The defendants do not argue that the government failed to prove that a conspiracy had existed. Instead, they contend that they neither knew of nor participated in the conspiracy.

As the Fourth Circuit has explained "'one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities.'" *Id.* at 1108 (quoting *United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993)). Indeed, there must only be "a slight connection between the defendant and the conspiracy to support conviction." *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992).

The totality of the circumstances shown by the government may suffice to infer the agreement necessary for a conspiracy conviction. *See United States v. Burgos*, 94 F.3d 849, 857-58 (4th Cir. 1996) (en banc). Because a conspiracy is typically covert, there is rarely any direct evidence of an agreement between the members. *See id.* at 857. In fact, a conspiracy may be proven entirely by circumstantial evidence, including "a defendant's 'relationship with other members of the conspiracy, the length of this association, the defendant's attitude and conduct, and the nature of the conspiracy.'" *Id.* at 858 (alterations omitted) (quoting *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir.1984)).

-4-

At trial, the government's evidence depicted Lisa Ball, Randy Musick, and Christina Richardson as leaders of a methamphetamine distribution ring that had operated in Grayson County, Virginia, and neighboring Ashe County, North Carolina. Lisa Ball sold methamphetamine to Musick, Richardson, and the defendants, who then either distributed it to addicts or consumed some or all of it themselves. Pursuant to their plea agreements with the government, Musick, Richardson, and other codefendants testified at trial.

Randy Musick became acquainted with Lisa Ball in April of 2006. He often spent time at her house, and eventually learned that she was involved with the distribution of methamphetamine. Twice a week during June and July of 2006, Ball's boyfriend, an individual named "Santos," would obtain about ten ounces of methamphetamine for Ball and others.[3]

Musick sold methamphetamine to both defendants, as well as Richardson and Clyde Weaver. In late April of 2006, Jesse Cox purchased an eight-ball of methamphetamine from Musick three or four times.[4] Jesse Cox never sold methamphetamine to Musick, but he occasionally gave it to him to use. Eventually, Jesse Cox stopped buying from Musick, and instead dealt directly with Ball. While

---

[3] An ounce equals 28 grams.

[4] An eight-ball of methamphetamine is equivalent to 3.5 grams and had a street value of approximately $250, according to the evidence.

-5-

at Ball's house, Musick witnessed Jesse Cox purchase an ounce of methamphetamine from Ball at least once.

At around the same time, Musick sold two eight-balls of methamphetamine to Robert Cox in his trailer on three or four occasions. In a few instances, Robert Cox "fronted" methamphetamine to Musick, meaning that he provided Musick methamphetamine in advance of payment. (Trial Tr. vol. 1, 67, Dec. 2, 2008.)

Also in the spring of 2006, Christina Richardson began to distribute methamphetamine. Musick originally served as her supplier, but Ball soon took his place, selling Richardson two ounces per week. Like Musick, Richardson witnessed Jesse Cox buy methamphetamine from Ball at Ball's house. Like Musick, Richardson sold Robert Cox either a gram or an eight-ball of methamphetamine more than once. Prior to 2006, Richardson bought methamphetamine from both defendants—an "eight-ball here and there" from Jessee Cox (Trial Tr. vol. 2, 33, Dec. 3, 2008), and a gram or an eight-ball from Robert Cox.

Local law enforcement officer Captain Chris Miller investigated Jesse Cox's involvement with methamphetamine. In a statement given to him in July of 2005, Jesse Cox claimed that he had purchased half-grams, grams, eight-balls, and quarter-ounces of methamphetamine from different sellers in Ashe County. From 2002 to 2004, he purchased up to five ounces from an individual named Derek Eller. During

-6-

Case 1:07-cr-00032-JPJ   Document 534   Filed 05/06/09   Page 6 of 15   Pageid#: 1324

the mid-1990s, he purchased pounds of methamphetamine. Richardson sold him up to two ounces. He described his experience with manufacturing methamphetamine—commonly known in the trade as "cooking"—and identified a scar on his leg that had resulted from a cooking accident. (Trial Tr. vol. 1, 13, Dec. 2, 2008.)

In November of 2007, Jesse Cox gave another statement to Captain Miller. In it he explained his relationship with Ball and Musick. In the summer of 2006, Jesse Cox bought up to a half-ounce of methamphetamine from Ball or Musick each week for four months. Sometimes Musick would deliver it to his house, and at times Ball would accompany Musick. Jesse Cox "turned" that methamphetamine — that is, after he bought it, he "in turn" sold it to users like Pam Logan and Jeff Davis, who bought one or two grams from him on at least eight occasions. (*Id.* at 17.) In short, he "sold a lot of dope." (*Id.* at 19.)

Jesse Cox also accompanied Musick and Davis to Ball's house to buy methamphetamine. He stayed in the car while Musick entered the house; Musick often returned with a quarter-ounce or several ounces.

Also in November of 2007, Robert Cox spoke to Sergeant Grady Price about his last purchase of methamphetamine, which had occurred in November of 2005. He and "another person" met "Sando" at the North Carolina and Virginia border. (*Id.*

at 45.) Robert Cox paid the "other person" $200; the "other person" left momentarily, but then returned to give Robert Cox an eight-ball. (*Id.* at 46.)

Clyde Weaver testified against both defendants. Weaver obtained up to four ounces of methamphetamine from Ball. In return, he gave her personal belongings, worked for her, and paid her money. Weaver gave both defendants methamphetamine on occasion, paid Jesse Cox to get methamphetamine for him, and bought a couple of eight-balls from Robert Cox.

Dale Bare testified against Robert Cox. Bare lived with Richardson and her boyfriend. In July of 2006, Robert Cox confronted Bare about a $1,000 check that Ball had stolen from Bare to pay Robert Cox for methamphetamine.

Pam Logan testified against Jesse Cox. In the late fall or early winter of 2006, Logan purchased an eight-ball from Ball. Logan also knew Richardson. She estimated that Richardson would buy a half-ounce or ounce of methamphetamine from Ball. On one occasion, Logan saw Richardson with a gallon-size baggie almost completely filled with eight-balls of methamphetamine. In the summer of 2006, Richardson informed Logan that Jesse Cox had been getting methamphetamine from Ball. In early 2007, Jesse Cox sold her a half-gram.

Logan's ex-boyfriend, Jeff Davis, also testified for the government. He purchased a half-gram from Ball and occasionally bought small quantities from

Musick and Richardson. Like Weaver, Davis did landscaping work for Richardson in return for methamphetamine. Jesse Cox sold Davis methamphetamine in small amounts, and while partying, gave some to him.

From this evidence the jury could reasonably infer that both defendants knew of and participated in the drug-trafficking conspiracy steered by Ball, and could reasonably attribute five hundred grams or more of methamphetamine to Jesse Cox.

In their present motions, the defendants present several arguments to contest the sufficiency of the evidence.

Both defendants contend that the evidence adduced at trial had failed to show that they participated in the conspiracy during the time alleged in the Indictment. I disagree.

Because the Indictment alleged that the conspiracy took place "[o]n or about and between April 1, 2006, and August 8, 2006," the government "was not required to prove the exact date; it suffices if a date reasonably near is established." [5] *United*

---

[5] On this issue, the jury received the following instruction:

> The indictment charges that certain events or conduct occurred "on or about" a specific date.
>
> The government does not have to prove that the events or conduct occurred on the exact dates alleged. Rather, it is sufficient if they occurred on a date reasonably near the date stated in the indictment.

(Instruction No. 18.)

*States v. Mata*, 491 F.3d 237, 243 (5th Cir. 2007) (internal quotations omitted).

I find that the government presented substantial evidence of the defendants' criminal activity occurring during the period alleged in the Indictment.

For instance, the evidence showed that in April of 2006, Jesse Cox bought an eight-ball of methamphetamine from Musick three or four times, and that he bought an ounce of methamphetamine from Ball at least once. During this same time, Robert Cox and Musick purchased methamphetamine from each other on several occasions. In his statement to Captain Miller in 2007, Jesse Cox stated that for four months during the summer of 2006, he purchased a half-ounce from Ball or Musick every week. In July of 2006, Robert Cox confronted Bare about a bad check used by Richardson to pay for methamphetamine. From this evidence alone the jury could reasonably conclude that the defendants participated in the conspiracy during the time alleged in the Indictment.

Jesse Cox contends that his purchase of substantial amounts of methamphetamine demonstrated nothing more than his personal use of the drug. For support, he points to several witnesses' inability to testify about what he did with the methamphetamine after he purchased it.

However, based on the evidence, it was certainly reasonable for the jury to infer that he had intended to sell that methamphetamine, rather than to conceive that he had bought in bulk to obtain the best deal. *See United States v. Mills*, 995 F.2d

480, 485 n.1 (4th Cir. 1993) (stating that "evidence of a buy-sell transaction, when coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were co-conspirators."). In his statements to Captain Miller, Jesse Cox admitted that he had "sold a lot of dope" (Trial Tr. vol. 1, 19, Dec. 2, 2008), and detailed his experience with buying and selling methamphetamine.

Jesse Cox discounts those statements. He claims that he was most likely under the influence of methamphetamine during the 2005 interview,[6] and maintains that a discrepancy between Captain Miller's testimony and a record of the 2007 interview rendered the admissions that he made during the 2007 interview unreliable.[7]

The jury received the following instruction on incriminating statements:

> You have heard that a defendant gave a statement that incriminated him.
>
> Whether this statement was voluntarily given and, if so, what weight to give it is entirely up to you. In other words, these are questions of fact which are up to a jury to decide.

---

[6] Before trial, Jesse Cox unsuccessfully moved to exclude the statements made in this interview under Federal Rule of Evidence 404(b), on the ground that they were related to events that had preceded the date of the Indictment. At trial and outside the presence of the jury, I elaborated on my prior ruling on the admissibility of the contested statements: "[T]hey are relevant, they show Mr. Jessee Cox's purchase of methamphetamine in large amounts, and therefore show his knowledge of and methods of purchasing this illegal drug which are relevant in this case." (Trial Tr. vol. 1, 29, Dec. 2, 2008.)

[7] Jesse Cox also claims that these statements are less credible because the record of the interviews that the government produced at trial was unsigned.

-11-

> In determining whether the statement was voluntary and what weight to give it, if any, you should consider what we call "the totality of the circumstances."
>
> You may consider, for example, whether the statement was induced by any promise or threat. You may also consider any other factor which your common sense tells you is relevant to the issue of voluntariness.

(Instruction. No. 12.)

During the 2005 interview, Jesse Cox stated that he had ingested methamphetamine two days earlier. Captain Miller explained that "the effects of methamphetamine last approximately 14 hours, 10 to 14 hours, depending on the person." (Trial Tr. vol. 1, 22, Dec. 2, 2008.) When specifically asked whether Jesse Cox was under the influence of drugs during the interview, Captain Miller replied: "No, sir, he was in custody so he was not able to access any methamphetamine in our jail, he was in custody." (*Id.* at 23.) Though other witnesses testified that the effects of methamphetamine would endure for more than fourteen hours, I find that based on Captain Miller's testimony, the jury had substantial evidence to conclude that Jesse Cox's statements made during the 2005 interview were not materially affected by his drug use.

Captain Miller's report of the 2007 interview with Jessee Cox indicated that for four months Jessee Cox had purchased a half-ounce per week in that year. However, at trial, Captain Miller testified that Jessee Cox had stated that those

-12-

Case 1:07-cr-00032-JPJ   Document 534   Filed 05/06/09   Page 12 of 15   Pageid#: 1330

purchases occurred in 2006. He explained the discrepancy as a "clerical error." (*Id.* at 30.) Jessee Cox relies on this discrepancy to contend that the statements made during the 2007 interview did "not constitute proof that [Jessee Cox] was distributing during the time frame alleged in the indictment . . . ." (Jesse Cox's Mem. in Supp. of Renewed Mot. for J. of Acquittal 20.)

In essence, Jesse Cox challenges the credibility of Captain Miller's testimony. Robert Cox made similar arguments at trial, and he incorporates them here in his present motion.[8]

In so far as these arguments relate to each of the defendants' Motion for Judgment of Acquittal, they are without merit. In considering a motion for judgment of acquittal, I must not consider the credibility of witnesses, "'but must assume that the jury resolved all contradictions . . . in favor of the Government.'" *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998) (quoting *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993)).

In regard to Jesse Cox's alternative Motion for New Trial based on the sufficiency of the evidence, I am not required to "view the evidence in the light most favorable to the government[,]" and therefore "may evaluate the credibility of the

---

[8] Throughout the trial, counsel for Robert Cox cross-examined some of the witnesses on their failure to mention Robert Cox to Captain Miller in their initial interviews.

-13-

witnesses." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). However, I find that, to the extent there were questions as to the government witnesses' credibility, they do not rise to the level appropriate to grant a new trial. *See id.* (stating that a new trial should be granted only "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment . . . .").

Notwithstanding the statements made to Captain Miller, there is other substantial evidence from which the jury could reasonably find that Jesse Cox had purchased methamphetamine for reasons other than personal use. Namely, the testimony from several witnesses who had either purchased or received methamphetamine from Jesse Cox, such as Musick, Richardson, Weaver, Logan, and Davis. In other words, Jesse Cox's conviction need not stand on the 2005 and 2007 statements alone.

Accordingly, I find that, viewed in the light most favorable to the government, there was substantial evidence to prove beyond a reasonable doubt that both defendants knew of the conspiracy proven at trial and participated in that conspiracy during the time alleged in the Indictment, and that five-hundred grams or more of a substance containing methamphetamine were attributable to Jessee Cox.

-14-

Case 1:07-cr-00032-JPJ   Document 534   Filed 05/06/09   Page 14 of 15   Pageid#: 1332

III

For the foregoing reasons, it is **ORDERED** as follows:

1. The Renewed Motion for Judgment of Acquittal on behalf of Robert Cox is DENIED; and

2. The Renewed Motion for Judgment of Acquittal and for a New Trial on behalf of Jessee Dane Cox is DENIED.

ENTER: May 6, 2009

/s/ JAMES P. JONES
Chief United States District Judge